UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL LYNN VAN ANTWERP, | No.  2:15-cv-2096 DB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff argues that the Administrative Law Judge's findings with respect to Listing 12.05C, residual functional capacity, and plaintiff's subjective testimony were erroneous.  For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

PROCEDURAL BACKGROUND

On February 2, 2010, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), alleging disability beginning on

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 6 & 8.)

1

September 1, 2009.  (Transcript ("Tr") at 105-11.)  Plaintiff's application was denied initially, (id. at 66-70), and upon reconsideration.  (Id. at 76-81.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ")", and on October 13, 2011, an ALJ found that plaintiff was not disabled.  (Id. at 20-27.)  On April 18, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's October 13, 2011 decision.  (Id. at 1-3.)

Plaintiff filed a civil action in this court on June 13, 2013.  (Id. at 588.)  On July 29, 2014, the court issued an order approving the parties' stipulation to remand the matter for further administrative proceedings.  (Id. at 592-93.)

On June 4, 2015, plaintiff appeared at yet another administrative hearing before an ALJ.  (Id. at 549-86.)  Plaintiff was represented by an attorney and testified at the administrative hearing.  (Id. at 549-50.)  The ALJ issued a partially favorable decision on July 29, 2015, finding that plaintiff became disabled on January 8, 2015.  (Id. at 542.)  The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 416.971 *et seq.*).
>
> 2. Since the alleged onset date of disability, September 1, 2009, the claimant has had the following severe impairments: generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), borderline intellectual functioning, Marfan Syndrome, bilateral hallux valgus and pes planus, bilateral subtalar degenerative joint disease, status post right anterior cruciate ligament repair with early patellofemoral arthrosis, obesity, and myofascial pain of the low back (20 CFR 416.920(c)).
>
> 3. Since the alleged onset date of disability, September 1, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that prior to January 8, 2015, the date the claimant became disabled, the claimant had the residual functional capacity to perform simple, unskilled work in an (sic) nonpublic setting with occasional fellow employee contact.  Beginning on January 8, 2015, the claimant has the residual functional capacity to perform light work in a nonpublic setting with occasional fellow employee contact.  She is frequently unable to perform work activities on a consistent basis due to interruptions from psychologically based symptoms.

> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. Prior to the established disability onset date, the claimant was a younger individual age 18-49. The claimant's age category has not changed since the established disability onset date (20 CFR 416.963).
>
> 7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Prior to January 8, 2015, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.969 and 416.969a).
>
> 10. Beginning on January 8, 2015, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).
>
> 11. The claimant was not disabled prior to January 8, 2015, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 416.920(g)).

(Id. at 532-42.)

Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on October 6, 2015. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following three principal errors:  (1) plaintiff meets Listing 12.05C; (2) the ALJ's residual functional capacity determination is erroneous; and (3) the ALJ improperly rejected plaintiff's subjective testimony.  (Pl.'s MSJ (ECF No. 16) at 12-19.[2])

////

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

I.     **Listing 12.05C**

Plaintiff argues that "the ALJ erred in determining that plaintiff did not satisfy Listing 12.05C and remand for calculation of benefits is warranted." (Id. at 13.) At step three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995). The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." Sullivan v. Zebley, 493 U.S. 521, 532 (1990); see also Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). If a claimant shows that his impairments meet or equal a Listing, she will be found presumptively disabled. 20 C.F.R. §§ 404.1525-404.1526, 416.925-416.926.

The claimant bears the burden of establishing a prima facie case of disability under the Listings. See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). To "meet" a listed impairment, the claimant must establish that her condition satisfies each element of the listed impairment. See Zebley, 493 U.S. at 530; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the listed impairment. Id.

"A claimant satisfies Listing 12.05C, demonstrating 'intellectual disability' and ending the five-step inquiry, if [s]he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C).

Here, on May 6, 2010, Dr. Robert Bilbrey examined plaintiff using, in part, the Weschsler Adult Intelligence Scale-III. (Tr. at 283-87.) Plaintiff's verbal IQ score 64 and full scale IQ was 69. (Id. at 285.) The ALJ's decision discussed Dr. Bilbrey's finding, stating:

> Although psychological testing conducted by Dr. Bilbrey revealed scores in the mildly mentally retarded range, Dr. Bilbrey did not diagnose mental retardation. Indeed, Dr. Bilbrey noted that the scores were inconsistent with her fluent speech and higher functional history. He opined that she might have borderline intellectual functioning or a learning disorder.

(Id. at 534.) The ALJ went on to state that in January of 2015, plaintiff was administered the same test by a different doctor and obtained a full scale IQ score of 75. (Id.) The ALJ found that score to be consistent with plaintiff's "average grades with some special education support," and the fact that plaintiff "attended some college classes where she obtained a certificate in office administration." (Id.) In this regard, the ALJ found that plaintiff's impairment or impairments did not meet or equal Listing 12.05. (Id.)

An ALJ may find that an IQ score is not valid. See Thresher v. Astrue, 283 Fed. Appx. 473, 475 (9th Cir. 2008). Although the Ninth Circuit has not stated what factors the ALJ may consider in finding an IQ to be invalid, "[c]ourts outside the Ninth Circuit permit an ALJ to consider several factors in assessing the validity of test results, such as evidence of malingering or feigning results, daily activities inconsistent with the alleged impairment, and psychologists' opinions that are supported by objective medical findings." Martinez v. Colvin, No. 1:14-cv-0578 SKO, 2015 WL 4662620, at *5 (E.D. Cal. Aug. 5, 2015); see, e.g., Hancock v. Astrue, 667 F.3d 470, 474 (4th Cir. 2012) ("We agree with our sister circuits that an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record."); Lax v. Astrue, 489 F.3d 1080, 1087 (10th Cir. 2007) ("We conclude that it was proper for the ALJ to consider other evidence in the record when determining whether Lax's IQ scores were valid and that the record contains substantial evidence to support a finding that Lax's IQ scores were not an accurate reflection of his intellectual capabilities."); Markle v. Barnhart, 324 F.3d 182, 186 (3rd Cir. 2003) ("the Commissioner is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record"); Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998) (same); Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) ("a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior").

Here, in finding Dr. Bilbrey's score invalid, the ALJ relied upon Dr. Bilbrey's finding that plaintiff's score was "unexpected" and "inconsistent with her presentation of fluent speech and higher functioning history." (Tr. at 287.) The ALJ also relied upon plaintiff's history of attending college classes, as well as the conflicting higher IQ score. (Id. at 534.) In this regard, the ALJ permissibly considered whether plaintiff's IQ score was valid, found that it was not, and that finding is supported by substantial evidence in the record. See generally APPENDIX 1 TO SUBPART P OF PART 404—LISTING OF IMPAIRMENTS, 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00 D(1)(6)(a) (July 20, 2015) ("However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.").

Accordingly, the court finds that plaintiff is not entitled to summary judgment on the claim that the ALJ erred in determining that plaintiff did not meet or equal listing 12.05C.

## II.     Residual Functional Capacity Determination

A claimant's Residual Functional Capacity ("RFC") is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1); see also Cooper v. Sullivan, 880 F.2d 1152, n.5 (9th Cir. 1989) ("A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations."). In conducting an RFC assessment, the ALJ must consider the combined effects of an applicant's medically determinable impairments on the applicant's ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Here, plaintiff first argues that the ALJ "gave no reasons" for finding plaintiff "less limited on the same evidence" in the July 29, 2015 decision than in the October 13, 2011 decision. (Pl.'s MSJ (ECF No. 16) at 14.) As noted by defendant, however, the October 13, 2011 decision was reversed by this court, pursuant to the parties' stipulation, and the matter remanded for further proceedings. (Def.'s MSJ (ECF No. 19) at 13.) In this regard, this court did not previously opine as to the propriety of the October 13, 2011 decision. And what is before this court now is only the ALJ's July 29, 2015 decision.

Next, plaintiff argues that plaintiff's "Marfan Syndrome impairments . . . . establish she has further limitations" than those found by the ALJ. (Pl.'s MSJ (ECF No. 16) at 15.) As noted above, however, the ALJ is tasked with determining plaintiff's RFC. RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1). Plaintiff's argument simply states that plaintiff's deformed feet and lax knees, establish further limitations. (Pl.'s MSJ (ECF No. 16) at 15.) That does not address whether substantial evidence supports the ALJ's RFC determination in spite of plaintiff's deformed feet and lax knees.

Plaintiff also argues that the ALJ "granted too much weight to the Agency consulting orthopedist Dr. Simmonds." (Id.) In this regard, Dr. John Simmonds examined plaintiff on May 12, 2010, and opined that plaintiff could perform light exertional work with some postural limitations. (Tr. at 292, 538.) The ALJ's decision afforded Dr. Simmonds' opinion "good weight." (Id. at 538.)

In this regard, the ALJ found that Dr. Simmonds was a specialist, his opinion was based on Dr. Simmonds' own examination, and that it was "generally consistent" with the opinions afforded by the nonexamining physicians and the treatment record. (Id. at 538.) See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("when an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence"); Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)) ("opinion of a specialist about medical issues related to his or her area of specialty'" should be given greater weight); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.

1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

The ALJ did, however, afford "little weight" to Dr. Simmonds' opined postural limitations. (Tr. at 538.) In this regard, the ALJ found that those limitations were inconsistent with plaintiff's ability to "care for her son, change positions without difficulty, climb stairs without problems, and perform household activities . . . ." (Id.) That finding is consistent with the record.

For example, Dr. Simmonds found that plaintiff's "joint range of motion [was] within normal limits," and plaintiff was "able to get onto and off the examination table and assume a supine position without any assistance or difficulty." (Id. at 290.) The ALJ also noted that examinations revealed that plaintiff had "no difficulty walking up and down stairs or chang[ing] positions." (Id. at 537.)

Finally, plaintiff argues that the "imagining evidence was not reviewed" by an examining or nonexamining physician and, therefore, this matter must be remanded so that they may be "assessed by an acceptable medical source." (Pl.'s MSJ (ECF No. 16) at 16-17.) Plaintiff, however, cites no authority in support of this argument nor was the court able to locate any.[3]

Accordingly, for the reasons stated above, plaintiff is not entitled to summary judgment on the claim that the ALJ's RFC determination constituted error.

### III. Subjective Testimony

Plaintiff argues that the ALJ "improperly discredited or ignored" plaintiff's testimony concerning non-exertional impairment. (Id. at 17.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

---

[3] In a footnote, plaintiff cites a number of cases for the proposition that an ALJ cannot arbitrarily substitute the ALJ's judgment for that of a competent medical opinion. (Pl.'s MSJ (ECF No. 16) at 16.) That, however, is not at issue in this action as the record contains competent medical opinions which the ALJ adopted.

9

> symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine, 574 F.3d at 693 (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ considered plaintiff's testimony and found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely credible prior to January 8, 2015 . . . ." (Tr. at 537.)

In this regard, the ALJ found that plaintiff's allegations were inconsistent with the fact that plaintiff's impairments were "controlled with minimal treatment." (Id.) The ALJ noted that plaintiff had "not required surgery, chiropractic adjustments, acupuncture, pain management treatment, use of a TENS unit, extensive physical therapy, or frequent changes in medications." (Id.) "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).

Accordingly, the court finds that plaintiff is not entitled to summary judgment with respect to the claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

## CONCLUSION

The court has found that plaintiff is not entitled to summary judgment on any claim. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2. Defendant's cross-motion for summary judgment (ECF No. 19) is granted;

3. The decision of the Commissioner of Social Security is affirmed; and

4. The Clerk of the Court shall enter judgment for defendant, and close this case

Dated: March 27, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\vanantwerp2096.ord